Holly Hayman, OSB #114146
hhayman@fwwlaw.com
Michelle M. Bertolino, OSB # 912130
mbertolino@fwwlaw.com
Farleigh Wada Witt
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| I.Q. CREDIT UNION,<br><br>               Plaintiff,<br><br>    v.<br><br>KHALEESI, Official No. 1262724, its Engines, Machinery, Appurtenances, etc., *In Rem*;<br><br>and<br><br>MARIAH LINDEN-ERICKSON, SUMER LUISE JOHNSON, AND UNKNOWN HEIRS AND BENEFICIARIES OF BLUE LINDEN,<br>*In Personam,*<br>               Defendants. | IN ADMIRALTY<br><br>Case No. 3:22-cv-01226<br><br>**VERIFIED COMPLAINT TO FORECLOSE PREFERRED SHIP MORTGAGE IN REM AND ENFORCEMENT OF SECURITY INTEREST** |

IQ Credit Union, a credit union with its principal offices in Washington (referred to at times herein a "Plaintiff" or "Credit Union") and regularly doing business in Oregon, alleges as follows:

I.	JURISDICTION AND VENUE

1.

This is a matter of admiralty and maritime jurisdiction under 46 U.S.C. § 31322 and §31325 and within the meaning of Fed. R. Civ. P. 9(h).

2.

Venue is proper in this Court because the *in rem* defendant vessel is physically located within the District of Oregon, Portland Division pursuant to 28 U.S.C. § 1391(b)(2).

II.	THE PARTIES

3.

At all times material herein, the defendant vessel KHALEESI, Official No. 1262724, its mast, bowsprit, boat, anchors, etc., and more fully described as a 2005 Hunter 33 Mariner, Hull # HUN33190D405 (the "Vessel"), was duly documented under the laws of the United States.  The Vessel is subject to the jurisdiction of this Court and is now, and will be during the pendency of this action, moored within this District at Passion Yachts, in Multnomah County, Oregon, and Plaintiff is paying and maintaining the monthly moorage fee for the Vessel. The Vessel is a recreational sailboat.

4.

At all material times herein, Blue Linden, also known as Blue Henry Linden (at times, "Borrower" or "Decedent"), was a resident of Clark County, Washington.  On information and belief, Blue Linden passed away on or about September 3, 2021.  A true copy of the Certificate of Death is attached hereto as **Exhibit A.**

5.

There is no pending probate case for the estate of Decedent.

6.

Upon information and belief, Defendants Mariah Linden-Erickson ("Defendant Linden-Erickson") and Sumer Luise Johnson ("Defendant Johnson"), are the only known heirs of Decedent. Defendants Linden-Erickson and Johnson may claim some right, title, interest, lien, and estate to the Vessel. Any such claim is inferior, junior, and subordinate to Plaintiff's secured interest described below.

7.

Defendants All Unknown Heirs and Beneficiaries of Blue Linden may claim some right, title, interest, lien, and estate to the Vessel described in paragraph VIII of this Complaint. Any such claim is inferior, junior, and subordinate to Plaintiff's secured interest described below.

III.   THE DISPUTE

8.

On or about July 16, 2015, Borrower entered into a Loan and Security Agreements and Disclosure Statement ("Loan Agreement") with Plaintiff for a loan in Multnomah County, Oregon, whereby Plaintiff agreed to loan money to Borrower in the principal sum of $75,657.00, plus interest on the unpaid balance, and Borrower agreed to repay the sums advanced. Pursuant to the Loan Agreement, Plaintiff is also entitled to default interest, late fees, unpaid taxes and insurance, and costs in collecting the amount due, including court costs and reasonable attorney fees. A true copy of the Loan Agreement is attached to and incorporated into this Complaint as **Exhibit B**.

9.

On or about July 16, 2015, Borrower granted a Preferred Marine Mortgage on the Vessel to Plaintiff (the "Mortgage"), to secure the obligation evidenced by the Loan Agreement.

A copy of the Preferred Marine Mortgage is attached to and incorporated into this Complaint as **Exhibit C**.

10.

The Mortgage conveys to Plaintiff "the whole of the Vessel, together with all the mast, bowsprit, boat, anchors, cables, chains, rigging, tackle, apparel, furniture, and all other necessaries appertaining and belonging to the Vessel." **Ex. C** at p. 2.

11.

Plaintiff is the owner and holder of the Loan Agreement and Mortgage (collectively, the "Loan Documents").

12.

The Loan Agreement specifies that an event of Default has occurred when, among other things, "… [Borrower] (does) not make a payment of the amount required on or before the date it is due…" or "… [Borrower] die(s)…" **Ex. B** at p. 2

13.

The Loan Documents are in default as a result of Borrower's death and failure to make ongoing payments under the terms of the Loan Documents. The last payment made was on September 7, 2021, in the amount of $725.00.

14.

There remains outstanding under the Loan Documents the following sums: the principal balance in the amount of $53,440.04, plus late fees in the amount of $110.97, plus interest at the contract rate through April 18, 2022, in the amount of $2,023.91, plus interest accruing at the contract rate of 5.99 percent per annum ($8.77 per diem), from April 19, 2022, until paid in full, plus cost, including but not limited to attorney fees and costs.

15.

The laws of the United States provide that, upon a default of any term of a preferred mortgage, the mortgage holder may enforce its claim for outstanding indebtedness against the Vessel and its appurtenances, *in rem*, 46 U.S.C. § 31325.

16.

Plaintiff has no plain, speedy, or adequate remedy at law.

IV.   CLAIMS FOR RELIEF

WHEREFORE, Plaintiff prays for judgment for foreclosure of the Vessel, and a declaration of amount of debt owed under the Loan Agremeent, as secured by the Mortgage, in its favor as follows:

A. That this Court decree payment due by the Vessel, and its appurtenances, of the following:

(i) The principal balance in the amount of $53,440.04, plus late fees in the amount of $110.97, plus interest at the contract rate through April 18, 2022, in the amount of $2,023.91, plus pre-judgment interest accruing at the contract rate of 5.99 percent per annum; plus post-judgment, until paid, subject to adjustment;

(ii) Reasonable costs for unpaid taxes, insurance, and for securing and preserving the Vessel as a result of Borrower's default under the Loan Documents;

(iii) Reasonable attorney fees and costs; and

(iv) The costs of this action including but not limited to charges for all fees of the U.S. Marshal, for moorage and storage of the Vessel, keepers and their

costs incurred in this action for all expenses for the sale of the Vessel, her engines, machinery, and appurtenances, etc;

B. That Plaintiff be adjudged the holder of a first preferred ship mortgage on the Vessel, and its appurtenances, for the payment of sums due, including costs and attorney fees, and that this Court declare the lien of the said Mortgage to be superior to all other liens, rights, titles, interests or estate which may exist against the Vessel and its appurtenances;

C. That the Mortgage be foreclosed and the Vessel, and its appurtenances, be sold, separately and singly or together, by the U.S. Marshal and the proceeds of the sale be applied and delivered to pay demands and claims of Plaintiff in the amount and to the extent as set forth herein, together with costs and attorney fees, and that it be declared any and all persons, firms or corporations claiming any interest in the Vessel, and its appurtenances, are forever barred and foreclosed of and from all rights of equity or redemption or claim in and to the Vessel and its appurtenances;

D. That at the sale of the Vessel and its appurtenances by the U.S. Marshal, Plaintiff be permitted to bid, without cash deposit, its judgment, accrued interest, costs and attorney fees, up to the full amount thereof;

E. That the proceeds of the sale of the Vessel and its appurtenances be applied as follows: first, to pay the costs and expenses of said sale; second, to pay the judgment of Plaintiff; and third, the surplus, if any, be paid to the Registry of the Court subject to further court order; and

F. That Plaintiff have such other and further relief as in law and equity it may be entitled to receive.

**THIS COMPLAINT IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. UNLESS YOU NOTIFY US WITHIN 30 DAYS AFTER RECEIVING THIS COMPLAINT THAT YOU DISPUTE THE VALIDITY OF THE DEBT, OR ANY PORTION OF IT, WE WILL ASSUME THE DEBT IS VALID. IF YOU NOTIFY US, IN WRITING, WITHIN 30 DAYS AFTER RECEIPT OF THIS COMPLAINT THAT YOU DO DISPUTE THE DEBT OR ANY PORTION OF IT, WE WILL PROVIDE VERIFICATION BY MAILING YOU A COPY OF THE RECORDS. IF YOU SO REQUEST, IN WRITING, WITHIN 30 DAYS AFTER RECEIPT OF THIS COMPLAINT, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT CREDITOR. EVEN IF YOU NOTIFY US THAT YOU DISPUTE THE VALIDITY OF THE DEBT AS OUTLINED ABOVE, YOU MUST COMPLY WITH THE REQUIREMENTS OF THE SUMMONS SERVED WITH THIS COMPLAINT TO AVOID A DEFAULT JUDGMENT BEING FILED AGAINST YOU.**

DATED this 19th day of August, 2022.

FARLEIGH WADA WITT

By: */s/ Holly Hayman*
Holly Hayman, OSB #114146
Michelle M. Bertolino, OSB #912130
(503) 228-6044
hhayman@fwwlaw.com
mbertolino@fwwlaw.com
Attorneys for Plaintiff

## VERIFICATION

I, Jaci Erickson, declare as follows:

1. I am a Loss Prevention Manager with IQ Credit Union, the Plaintiff in this action.
2. I have read the above and foregoing Complaint and hereby verify the facts contained therein are true and correct to the best of my knowledge, information, and belief.
3. I am authorized on behalf of IQ Credit Union to verify this Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this verification was executed in Vancouver, Washington.

DATED this 17 day of August, 2022.

_____
Jaci Erickson

Page 8 -   VERIFIED COMPLAINT TO FORECLOSE PREFERRED SHIP MORTGAGE IN REM AND ENFORCEMENT OF SECURITY INTEREST

C:\Users\jacie\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\YH6LRA6D\407673602-COMPLAINT (Foreclosure of Vessel)2.DOCX

## CERTIFICATE OF DEATH



CERTIFICATE NUMBER: 2021-045869

DATE ISSUED: 09/17/2021
FEE NUMBER:

FIRST AND MIDDLE NAME(S): BLUE HENRY
LAST NAME(S): LINDEN

COUNTY OF DEATH: CLARK
DATE OF DEATH: SEPTEMBER 03, 2021
HOUR OF DEATH: UNKNOWN
SEX: MALE          AGE: 68 YEARS
SOCIAL SECURITY NUMBER: ▇▇▇-▇▇-5014

PLACE OF DEATH: HOME
FACILITY OR ADDRESS: ▇▇▇▇▇
CITY, STATE, ZIP: VANCOUVER, WASHINGTON 98682

RESIDENCE STREET: ▇▇▇▇▇
CITY, STATE, ZIP: VANCOUVER, WA 98682
INSIDE CITY LIMITS: YES          COUNTY: CLARK
TRIBAL RESERVATION: NOT APPLICABLE
LENGTH OF TIME AT RESIDENCE: 2 MONTHS

HISPANIC ORIGIN: NO, NOT SPANISH/HISPANIC/LATINO
RACE: WHITE

BIRTH DATE: ▇▇▇▇▇ 195?
BIRTHPLACE: ▇▇▇▇▇ CA

FATHER: ▇▇▇▇▇ LINDEN
MOTHER: ▇▇▇▇▇

MARITAL STATUS: DIVORCED
SURVIVING SPOUSE: NOT APPLICABLE

METHOD OF DISPOSITION: ▇▇▇▇▇
PLACE OF DISPOSITION: ▇▇▇▇▇

OCCUPATION: MACHINIST
INDUSTRY: FACILITIES MAINTENANCE
EDUCATION: SOME COLLEGE CREDIT, BUT NO DEGREE
US ARMED FORCES: NO

CITY, STATE: VANCOUVER, WASHINGTON
DISPOSITION DATE: SEPTEMBER 16, 2021

INFORMANT: MARIAH LINDEN-ERICKSON
RELATIONSHIP: DAUGHTER
ADDRESS: ▇▇▇▇▇ VANCOUVER, WA 98661

FUNERAL FACILITY: ▇▇▇▇▇ CHAPEL
ADDRESS: ▇▇▇▇▇
CITY, STATE, ZIP: VANCOUVER, WASHINGTON 98684
FUNERAL DIRECTOR: ASHLINN B. BARTOCCI

CAUSE OF DEATH:
A  UNKNOWN; CARDIAC ARREST
   INTERVAL: SECONDS
B  FLECAINIDE USE
   INTERVAL: MINUTES
C  ATRIAL FIBRILLATION
   INTERVAL: MONTHS
D
   INTERVAL:

OTHER CONDITIONS CONTRIBUTING TO DEATH:

MANNER OF DEATH: NATURAL
AUTOPSY: NO
WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE
CAUSE OF DEATH: NOT APPLICABLE
DID TOBACCO USE CONTRIBUTE TO DEATH: PROBABLY
PREGNANCY STATUS IF FEMALE: NO RESPONSE

DATE OF INJURY:
HOUR OF INJURY:
INJURY AT WORK:
PLACE OF INJURY:

LOCATION OF INJURY:

CITY, STATE, ZIP:
COUNTY:
DESCRIBE HOW INJURY OCCURRED:

CERTIFIER NAME: KENDRA D. MESA
TITLE: PHYSICIAN ASSISTANT
CERTIFIER ADDRESS: 304 N LEISER RD
CITY, STATE, ZIP: VANCOUVER, WASHINGTON 98664
DATE SIGNED: SEPTEMBER 14, 2021

CASE REFERRED TO ME/CORONER: YES
FILE NUMBER: NOT APPLICABLE
ATTENDING PHYSICIAN: NOT APPLICABLE

IF TRANSPORTATION INJURY, SPECIFY: NOT APPLICABLE

LOCAL DEPUTY REGISTRAR: LINDA L. POLAND
DATE RECEIVED: SEPTEMBER 16, 2021

EXHIBIT A
Page 1 of 1



iQ CREDIT UNION
Financial Intelligence Pays Off
PO Box 1739
Vancouver, WA 98668-1739
(800) 247-4364
www.iqcu.com



# LOAN AND SECURITY AGREEMENTS AND DISCLOSURE STATEMENT

| [X] FIXED RATE<br>[ ] VARIABLE RATE | LOAN DATE<br>7/16/2015 | LOAN NUMBER | ACCOUNT NUMBER<br>2652 | GROUP POLICY NUMBER | MATURITY DATE<br>7/29/2030 |
|---|---|---|---|---|---|

## BORROWER 1
**NAME AND ADDRESS**
BLUE LINDEN
4403 NE AINSWORTH ST
PORTLAND, OR 97218

## BORROWER 2
**NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1)**

### TRUTH IN LENDING DISCLOSURE 'e' means an estimate

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate.<br>5.990 % | FINANCE CHARGE<br>The dollar amount the credit will cost you.<br>$ 41,322.43 | Amount Financed<br>The amount of credit provided to you or on your behalf.<br>$ 75,657.00 | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled.<br>$ 124,373.22 | Total Sale Price<br>The total cost of your purchase on credit is $<br>which includes your downpayment of $ . |
|---|---|---|---|---|

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 179 | $ 690.97 | MONTHLY beginning 8/29/2015 |
| 1 | $ 689.59 | 7/29/2030 |

**Prepayment:** If you pay off early you will not have to pay a penalty.

**Required Deposit:** The Annual Percentage Rate does not take into account your required deposit, if any.

[ ] **Assumption:** Someone buying your mobile home cannot assume the remainder of the loan on the original terms.

**Demand:** [ ] This obligation has a demand feature.
[ ] All disclosures are based on an assumed maturity of one year.

**Property Insurance:** You may obtain property insurance from anyone you want that is acceptable to the credit union. If you get the insurance from us, you will pay $

**Late Charge:** If we do not receive your payment within 10 days of its due date, you will pay a late fee of 5% of the payment amount, but not less than $5.00.

**Filing Fees** $ 0.00   **Non-Filing Insurance** $

**Security:** Collateral securing other loans with the credit union may also secure this loan. You are giving a security interest in your shares and dividends and, if any, your deposits and interest in the credit union; and the property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| HUNTER | HUNTER 33 MARINER P | 2005 | HUN33190D405 | | $ 78,500.00 | |
| | | | | | $ | |
| | | | | | $ | |

Other (Describe)
Pledge of Shares $ _____ in Account No. _____    $ _____ in Account No. _____

**Variable Rate:**
If your loan is secured by a Certificate or Share account, the interest rate will be based on the dividend rate of the deposit securing the loan (Index) plus a margin of 3.00%. The interest rate can change if the Index rate changes. Any increase in the interest rate will result in more payments of the same amount. For example, if your loan was for $4,000.00 at 4.5% for four years and the rate increased to 5.00% after one year, you would make 1 additional payment of the same amount.

See your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

### SIGNATURES

By signing as Borrower, you agree to the terms of the Loan Agreement. If property is described in the "Security" section of the Truth in Lending Disclosure, you also agree to the terms of the Security Agreement. If you sign as "Owner of Property" you agree only to the terms of the Security Agreement.
**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.**

| X *[signature]* (SEAL) 7/16/2015 | X (SEAL) |
|---|---|
| BORROWER DATE | BORROWER 2 DATE |
| X (SEAL) | X (SEAL) |
| [ ] OTHER BORROWER [ ] OWNER OF PROPERTY [ ] WITNESS  DATE | [ ] OTHER BORROWER [ ] OWNER OF PROPERTY [ ] WITNESS  DATE |

© CUNA MUTUAL GROUP, 1999, 2000, 01, 02, 03, 04, 06, 08, ALL RIGHTS RESERVED

EXHIBIT B
Page 1 of 4
NXX019 (LASER)

Credit Union IQ Credit Union   Loan No.   Acct. No.
Borrower(s) BLUE LINDEN

## ITEMIZATION OF THE AMOUNT FINANCED

| Itemization of Amount Financed of $ 75,657.00 | Amount Given to You Directly $ 0.00 | Amount Paid on Your Account $ 0.00 | Prepaid Finance Charge $ 0.00 |
|---|---|---|---|

**Amounts Paid to Others on Your Behalf:** (If an amount is marked with an asterisk (*) we will be retaining a portion of the amount.)

| $ 75,657.00 To VANNESS VESSEL TITLING & CLOSING S\ | $ To |
| $ To | $ To |
| $ To | $ To |
| $ To | $ To |
| $ To | $ To |
| $ To | $ To |

## LOAN AGREEMENT

In this Loan Agreement ("Agreement") all references to "Credit Union," "we," "our," or "us," mean the Credit Union whose name appears above and anyone to whom the Credit Union assigns or transfers this Agreement. All references to "you," or "your" mean each person who signs this Agreement as a borrower.

**1. PROMISE TO PAY -** You promise to pay $ 75,657.00 to the Credit Union plus interest on the unpaid balance until what you owe has been repaid. For fixed rate loans the interest rate is 5.990 % per year.

For variable rate loans the initial interest rate is         % per year and will vary as follows:

If your loan is secured by a Certificate or Share account, the interest rate will be based on the dividend rate of the deposit securing the loan (Index) plus a margin of 3.00%. The interest rate can change if the Index rate changes. Any increase in the interest rate will result in more payments of the same amount. For example, if your loan was for $4,000.00 at 4.5% for four years and the rate increased to 5.00% after one year, you would make 1 additional payment of the same amount.

**Collection Costs:**

You agree to pay all costs of collecting the amount you owe under this Agreement, including court costs and reasonable attorney fees.

**2. PAYMENTS -** You promise to make payments of the amount and at the time shown in the Truth in Lending Disclosure. If this is a variable rate loan, the Promise to Pay section tells you whether, if the interest rate increases, you will have to make more payments, higher payments, or if the final payment will be a balloon payment. You may prepay any amount without penalty. If you prepay any part of what you owe, you are still required to make the regularly scheduled payments, unless we have agreed to a change in the payment schedule. Because this is a simple interest loan, if you do not make payments exactly as scheduled, your final payment may be more or less than the amount of the final payment that is disclosed. If you elect voluntary payment protection, we will either include the premium or program fees in your payments or extend the term of your loan. If the term is extended, you will be required to make additional payments of the scheduled amount, until what you owe has been paid. You promise to make all payments to the place we choose. If this loan refinances another loan we have with you, the other loan will be canceled and refinanced as of the date of this loan. Unless otherwise required by law, payments will be applied to amounts owed in the manner we choose.

**3. LOAN PROCEEDS BY MAIL -** If the proceeds of this loan are mailed to you, interest on this loan begins on the date the loan proceeds are mailed to you.

**4. SECURITY FOR LOAN -** This Agreement is secured by all property described in the "Security" section of the Truth in Lending Disclosure. Property securing other loans you have with us also secures this loan, unless the property is a dwelling. A dwelling secures this loan only if it is described in the "Security" section of the Truth in Lending Disclosure for this loan. In addition to your pledge of shares, we may also have what is known as a statutory lien on all individual and joint accounts you have with us. A statutory lien means we have the right under federal law and many state laws to claim an interest in your accounts. We can enforce a statutory lien against your shares and dividends, and if any, interest and deposits, in all individual and joint accounts you have with us to satisfy any outstanding financial obligation that is due and payable to us. We may exercise our right to enforce this lien without further notice to you, to the extent permitted by law. **For all borrowers:** You pledge as security for this loan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts you have with the credit union now and in the future. **The statutory lien and/or your pledge will allow us to apply the funds in your account(s) to what you owe when you are in default.** The statutory lien and your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.

**5. DEFAULT -** You will be in default under this Agreement if you do not make a payment of the amount required on or before the date it is due. You will be in default if you break any promise you made in connection with this loan or if anyone is in default under any security agreement made in connection with this Agreement. You will be in default if you die, file for bankruptcy, become insolvent (that is, unable to pay your bills and loans as they become due), or if you made any false or misleading statements in your loan application. You will also be in default if something happens that we believe may seriously affect your ability to repay what you owe under this Agreement or if you are in default under any other loan agreement you have with us.

**6. ACTIONS AFTER DEFAULT -** When you are in default, we may demand immediate payment of the entire unpaid balance under this Agreement. You waive any right you have to receive demand for payment, notice of intent to demand immediate payment and notice of demand for immediate payment. If we demand immediate payment, you will continue to pay interest at the rate provided for in this Agreement, until what you owe has been repaid. We will also apply against what you owe any shares and/or deposits given as security under this Agreement. We may also exercise any other rights given by law when you are in default.

EXHIBIT B
Page 2 of 4

© CUNA MUTUAL GROUP, 1999, 2000, 01, 02, 03, 04, 06, 08, ALL RIGHTS RESERVED       NXX019 (LASER)

Case 3:22-cv-01226-YY   Document 1   Filed 08/19/22   Page 12 of 17

Credit Union  IQ Credit Union                                Loan No.          Acct. No.
Borrower(s) BLUE LINDEN

## LOAN AGREEMENT (continued)

**7. EACH PERSON RESPONSIBLE -** Each person who signs this Agreement will be individually and jointly responsible for paying the entire amount owed under this Agreement. This means we can enforce our rights against any one of you individually or against all of you together.

**8. LATE CHARGE -** If you are late in making a payment, you promise to pay the late charge shown in the Truth in Lending Disclosure. If no late charge is shown, you will not be charged one.

**9. DELAY IN ENFORCING RIGHTS -** We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives.

**10. CONTINUED EFFECTIVENESS -** If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**11. NOTICES -** Notices will be sent to you at the most recent address you have given us in writing. Notice to any one of you will be notice to all.

**12. USE OF ACCOUNT -** You promise to use your account for consumer (personal, family or household) purposes, unless the credit union gives you written permission to use the account also for agricultural or commercial purposes, or to purchase real estate.

**13. NO ORAL AGREEMENTS -- THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**14. OTHER PROVISIONS -**

```
The maximum deductible for both comp and collision on
vehicle loans is $1,000.00.
```

Credit Union IQ Credit Union   Loan No. ▆▆▆▆   Acct. No. ▆▆▆▆
Borrower(s) BLUE LINDEN

## SECURITY AGREEMENT

In this Agreement all references to "credit union," "we," "our" or "us" mean the credit union whose name appears on this document and anyone to whom the credit union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "you" or "your" mean any person who signs this Agreement.

**1. THE SECURITY FOR THE LOAN -** You give us what is known as a security interest in the property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS -** The security interest secures the Loan and any extensions, renewals or refinancings of the Loan. **If the Property is not a dwelling, the security interest also secures any other loans, including any credit card loan, you have now or receive in the future from us and any other amounts you owe us for any reason now or in the future, except any loan secured by your principal residence.** If the Property is household goods as defined by the Federal Trade Commission Credit Practices Rule or your principal residence, the Property will secure only this Loan and not other loans or amounts you owe us.

**3. OWNERSHIP OF THE PROPERTY -** You promise that you own the Property or, if this Loan is to buy the Property, you promise you will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that you have not already told us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise you will allow no other security interest or lien to attach to the Property either by your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST -** If your state issues a title for the Property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. You irrevocably authorize us to execute (on your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in form satisfactory to us. You promise to do whatever else we think is necessary to protect our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY -** Until the Loan has been paid off, you promise you will: (1) Use the Property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the Property. (5) Promptly notify us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose. (7) Not retitle Property in another state without telling us.

**6. PROPERTY INSURANCE, TAXES AND FEES -** You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.
If you cancel your insurance and get a refund, we have a right to the refund. If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy.
If you do not pay the taxes or fees on the Property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and you will pay interest on those amounts at the same rate you agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the Loan, we may increase your payments to pay the amount added within the term of the insurance or term of the Loan.

**7. INSURANCE NOTICE -** If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the Property. The premium for this insurance may be higher because the insurance company may have given us the right to purchase insurance after uninsured collateral is lost or damaged. **The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.**

**8. DEFAULT -** You will be in default if you break any promise you make or fail to perform any obligation you have under this Agreement. You will also be in default under this Agreement if the Loan is in default. You will be in default if any property you have given us as security is repossessed by someone else, seized under a forfeiture or similar law, or if anything else happens that significantly affects the value of the property or our security interest in it.

**9. WHAT HAPPENS IF YOU ARE IN DEFAULT -** When you are in default, we may demand immediate payment of the outstanding balance of the Loan without giving you advance notice and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If we ask, you promise to deliver the Property at a time and place we choose. If the property is a motor vehicle or boat, you agree that we may obtain a key or other device necessary to unlock and operate it, when you are in default. We will not be responsible for any other property not covered by this Agreement that you leave inside the Property or that is attached to the Property. We will try to return that property to you or make it available for you to claim.
After we have possession of the Property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code.
If you have agreed to pay the Loan, you must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what you owe under this Agreement. You agree to pay interest on that amount at the same rate as the Loan until that amount has been paid.

**10. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN -** We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives. If we change the terms of the Loan, you agree that this Agreement will remain in effect.

**11. CONTINUED EFFECTIVENESS -** If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**12. NOTICE TO NORTH DAKOTA BORROWERS PURCHASING A MOTOR VEHICLE -** THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

**13. NOTICE FOR ARIZONA OWNERS OF PROPERTY -** It is unlawful for you to fail to return a motor vehicle that is subject to a security interest, within thirty days after you have received notice of default. The notice will be mailed to the address you gave us. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.00.

☐ *The following notice applies ONLY when the box at left is marked.*

**14. NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**15. OTHER PROVISIONS -**

The maximum deductible for both comp and collision on vehicle loans is $1,000.00.

EXHIBIT B
Page 4 of 4

© CUNA MUTUAL GROUP, 1999, 2000, 01, 02, 03, 04, 06, 08, ALL RIGHTS RESERVED   NXX019 (LASER)

# VESSEL RECORDING CONFORMATION

**OFFICIAL NUMBER:** 1262724   **VESSEL NAME:** KHALEESI

**BORROWER NAME/ADDRESS:**

Blue Linden; 100%
11850 North Center Avenue, #171
Portland, OR 97217

**LIENHOLDER NAME/ADDRESS:**

I.Q. Credit Union; 100%
P.O. Box 1739
Vancouver, WA 98668

**LEINHOLDER AGENT:**

**TYPE OF INSTRUMENT:** PREFERRED MARINE MORTGAGE

**AMOUNT OF LIEN/NOTE:** $75,657.00

**DATE OF LIEN:** July 16, 2015

**DATE AND TIME OF LIEN RECORDATION:** July 24, 2015   **TIME:** 06:08 PM

**BATCH OR BOOK NUMBER:** 29498000   **DOC.ID OR PAGE NUMBER:** 7

The Abstract of Title for the referenced vessel is attached as evidence that the aforementioned lien has been recorded by the Coast Guard National Vessel Documentation Center in the location cited and holds the first lien position.

Documents attached could include copies or originals of: Abstract of Title, Preferred Marine Mortgage, Certificate of Documentation



1100 Dexter Avenue N, Ste. 100, Seattle, WA 98109  O:(206)-273-7493 F:(206)-273-7962 *info@vesseltitle.com

EXHIBIT C
Page 1 of 4

Upon recordation return to

VanNess Vessel Title & Closing Svc.
1100 Dexter Avenue N, Ste. 100
Seattle, WA 98109

# PREFERRED MARINE MORTGAGE

This is a Preferred Marine Mortgage, on the whole (100%) of the vessel know as : O/N: 1262724

Vessel Name: KHALEESI

Vessel Official Number: N/A

Vessel Hull Number: HUN33190D405

Mortgagor: Blue Linden; 100%
11850 N Center Avenue #171
Portland, OR 97217

And all heirs, executors or administrators, successors, and assigns.

Mortgagee: I.Q. Credit Union; 100%
P O Box 1739
Vancouver, WA 98668

And all heirs, executors or administrators, successors, and assigns.

Mortgagor as sole owner of the vessel referenced above, being indebted to Mortgagee in the sum of :
$ 75,657.00 ( Seventy Five Thousand Six Hundred Fifty Seven Dollars And No Cents ) U S Dollars

Under a promissory note, a copy of which is attached to this document, for the purpose of securing the payment of the said debt, and the interest thereon, granted, bargained, sold, and mortgaged and by these presents does grant, sell and mortgage unto the Mortgagee, the whole of the Vessel, together with all of the mast, bowsprit, boat, anchors, cables, chains, rigging, tackle, apparel, furniture, and all other necessaries appertaining and belonging to the Vessel

To have and to hold the Vessel and all other above-mentioned appurtenances unto it the Mortgagee and to the sole and only proper use, benefit, and behoof of the Mortgagee forever: Provided always, and the condition of these presents is such, that, if the Mortgagor shall pay or cause to be paid, to the Mortgagee the debt described above, with the interest thereon, at the time or times and in the manner following, to wit: repayment shall be in accordance with the terms of a certain promissory note, a copy of which is attached to this document; then these presents shall be void and of no effect, subject, however, to the provisions contained herein; and the Mortgagor hereby agrees to pay the debt aforesaid, and the interest thereon, and to fulfill and perform each and every one of the covenants and conditions contained herein.

However, if default be made in such payments, or in any one of such payments, or if default be made in the prompt and faithful performance of any of the covenants contained herein, or if the Mortgagee shall at any time deem itself in danger of losing said debt, or any part thereof, by delaying the collection until the expiration of the time limited for the payment upon or taken by virtue of any attachment or execution against the Mortgagor, or if the Mortgagor shall permanently remove, or attempt to permanently remove, the Vessel beyond the limits of the United States, without the express written consent of Mortgagee, or if the Mortgagor shall suffer and permit the Vessel to be run into debt, or if the Mortgagor shall negligently or willfully permit said property to waste, or be damaged or destroyed, the Mortgagee is hereby authorized to take possession of said goods, chattels, and personal property at any time, wherever found, either before or after the expiration of the time aforesaid, and to sell and convey the same, or so much as may be necessary to satisfy the said debt, interest and reasonable expenses, after first giving a notice of a legal number of days, to be given by publication in some newspaper published in the city where the Mortgagor resides or conducts business, and to retain the same out of the proceeds of such sale, the surplus (if any) to belong and to be returned to the Mortgagor.

EXHIBIT C
Page 2 of 4

And it is agreed that on such sale the Mortgagee may become the purchaser.

The Mortgagor does further covenant and agree, to and with the Mortgagee, that the Mortgagor will immediately procure the Vessel to be insured against loss or damage by fire, and against all marine risks and disasters, in some good and reasonable insurance company or companies, to be selected and approved by the Mortgagee, for an amount at least equal to the amount which shall from time to time remain unpaid upon the said indebtedness and interest thereon, and that the Mortgagor will keep such policy or policies renewed from time to time, and to keep the same valid at all time for the amount aforesaid; that the Mortgagor will do, suffer, or permit to be done no act whereby said insurance would be liable to be forfeited, and the Mortgagor will immediately assign and deliver to the Mortgagee said insurance policy or policies, having first duly obtained the proper consent of the insurance company or companies to such assignment, and that the Mortgagor will also promptly deliver to the Mortgagee the renewal certificates of said policies as a collateral security for the payment of said indebtedness. And, if Mortgagor shall fail to immediately procure, assign, and deliver such policy or policies as aforesaid, or shall at any time fail to immediately renew the same, and deliver the renewal certificates as aforesaid, the Mortgagee is hereby authorized to procure the Vessel to be insured as aforesaid, and to keep the policy or policies renewed, and the amount which it has to pay shall be considered, and is hereby declared to be, an additional indebtedness hereby intended to be secured, and shall be repaid to the Mortgagee on demand, and shall bear interest at the rate reflected on the attached promissory note from the time of such payment until repaid.

It is further provided that it shall be lawful for the Mortgagor to retain possession of the property hereby mortgaged, and at Mortgagor's own expense to use and enjoy the same until said indebtedness shall become due, unless the Mortgagee should at any earlier date declare the Mortgage forfeited for nonperformance of any of the covenants contained herein, or by virtue of any authority hereby conferred on the Mortgagee.

Pursuant to the provisions of the Ship Mortgage Act of 1920 Subsection E., the Mortgagor will place, and use diligence to retain one copy of this Preferred Mortgage on board the mortgaged Vessel. The Mortgagor will cause such copy and the Document of the Vessel to be exhibited by the Master to any person or persons having business with the Vessel, which may give rise to a maritime lien upon the Vessel or to the sale, conveyance or mortgage thereof.

In Testimony whereof, the Mortgagor has executed this instrument this __16__ day of __July__, 20__15__

_____
Blue Linden

**ACKNOWLEDGEMENT**

State of __WASHINGTON__
County of __CLARK__

On this day personally appeared before me Blue Linden, known or satisfactorily shown to me to be the individual described in and who executed this instrument and acknowledged it to be his free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this __16th__ day of __July__, 20__15__

```
DANIEL SALGADO
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
SEPTEMBER 30, 2017
```

Notary Public in and for the State of __WA__
Residing at __Vancouver__
My commission expires __9/30/2017__

EXHIBIT C
Page 3 of 4

## PRIOR AND SUBSEQUENT LIENS AFFIDAVIT

The undersigned, in pursuance of the Ship Mortgage Act of 1920, hereby certify that, at the time of executing this Preferred Marine Mortgage, that there is no maritime lien, prior mortgage or other obligation or liability upon said Vessel known to the undersigned Mortgagor, except: None. It is further certified that without the consent of the Mortgagee under the above-mentioned Mortgage, there will not be incurred after the execution of said Mortgage, and before the Mortgagee has had a reasonable time in which to record the same and have the endorsement in respect thereto made upon the Document of said Vessel, any contractual obligation creating a lien upon the vessel other than lien for wages for stevedores employed directly by the owner-master, or agent of the Vessel, wages of the crew of the vessel, general average salvage, including contract salvage, in respect to said Vessel.

_____
Blue Linden

State of __WA__
County of __CLARK__

Signed and sworn to before me on this __16th__ day of __July__, 20__15__ by Blue Linden

DANIEL SALGADO
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
SEPTEMBER 30, 2017

Notary Public in and for the State of __WA__
Residing at __Vancouver__
My commission expires __9/30/2017__

EXHIBIT C
Page 4 of 4